

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

COLLEEN C. PICCONE, VINCENT A.
PICCONE, JR., COLLEEN M. PICCONE,

Plaintiffs,

v.

CITY OF NEW YORK, NEW YORK CITY
ADMINISTRATION FOR CHILDREN'S
SERVICES, ACS INVESTIGATOR
CYNTHIA DONNELLY, ACS
INVESTIGATOR LORI FERRETTI, ACS
DEPUTY DIRECTOR SEE YUEN KUET,
ACS JOHN DOES 1-10, NEW YORK CITY
POLICE DEPARTMENT, NYPD OFFICER
NO. 1, NYPD OFFICER NO. 2, NYPD
SERGEANT HARRINGTON, NYPD JOHN
DOES 1-10,

Defendants.

---

CV 08-4925

Civil Action No. _____
(_____, J.) (_____, M.J.)

**COMPLAINT** COGAN, J.

AZRACK, M.J.

**JURY TRIAL DEMANDED**

---

COME NOW THE PLAINTIFFS Colleen C. Piccone, Vincent A. Piccone, Jr.,

and Colleen M. Piccone, by their attorney, Steven M. Warshawsky, for their complaint against

the Defendants, and alleging as follows:

## NATURE OF THE ACTION

1.     The Fourth Amendment of the U.S. Constitution provides, in relevant part,

that "[t]he right of the people to be secure in their persons, houses, papers, and effects against

unreasonable searches and seizures, shall not be violated."  The U.S. Supreme Court has

explained that "the physical entry of the home is the chief evil against which the wording of the

Fourth Amendment is directed."  Illinois v. Rodriguez, 497 U.S. 177, 191 (1990) (citation

omitted).

-1-

2.     This is a civil rights action under 42 U.S.C. § 1983 arising from the unconstitutional search of Plaintiffs' home by members of the New York City Administration for Children's Services ("ACS") and the New York City Police Department ("NYPD") on January 25-26, 2008. The search was conducted without a warrant, without consent, and in the absence of exigent circumstances. Upon information and belief, the search was authorized by high-ranking supervisory and policymaking officials of ACS and the NYPD. The Defendants' conduct, which was willful and reckless, violated Plaintiffs' clearly established rights under the Fourth Amendment of the U.S. Constitution. Plaintiffs are entitled to compensatory damages for injuries they suffered as a result of the Defendants' unconstitutional conduct, punitive damages to punish and deter the Defendants from engaging in similar unconstitutional conduct in the future, and statutory attorney's fees and costs.

## PARTIES

3.     Plaintiff Colleen C. Piccone ("Ms. Piccone") is a citizen of the state of New York, and resides at 35 Ridge Loop, Staten Island, New York. Ms. Piccone is employed as a senior managing attorney with a federal law enforcement agency. Ms. Piccone is 44 years old.

4.     Plaintiff Vincent A. Piccone, Jr. ("Dr. Piccone") is a citizen of the state of New York, and resides at 35 Ridge Loop, Staten Island, New York. Dr. Piccone is Ms. Piccone's father. Dr. Piccone is a graduate of McGill University Faculty of Medicine, and is a board certified vascular and thoracic surgeon. Dr. Piccone is 78 years old.

5.     Plaintiff Colleen M. Piccone ("Mrs. Piccone") is a citizen of the state of New York, and resides at 35 Ridge Loop, Staten Island, New York. Mrs. Piccone is married to Dr. Piccone, and is Ms. Piccone's mother. Mrs. Piccone is employed as an office manager. Mrs. Piccone is 81 years old.

6.      Defendant City of New York ("NYC") is a municipality of the state of New York.  The Corporation Counsel of NYC is Michael A. Cardozo.  The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007.

7.      Defendant New York City Administration for Children's Services ("ACS") is an agency or instrumentality of the City of New York.  The Commissioner of ACS is John B. Mattingly.  The main office of ACS is located at 150 William Street, 18th Floor, New York, New York, 10038.

8.      Defendant ACS Investigator Cynthia Donnelly ("Donnelly") is an employee of ACS.  Upon information and belief, her place of business is the Staten Island ACS Borough Office located at 350 St. Marks Place, 5th Floor, Staten Island, New York, 10301.  Donnelly personally participated in the unconstitutional search of Plaintiffs' residence on January 25-26, 2008.  In addition, she personally ordered the unconstitutional confinement of Ms. Piccone in connection with the search.  Donnelly is being sued in her individual capacity.

9.      Defendant ACS Investigator Lori Ferretti ("Ferretti") is an employee of ACS.  Upon information and belief, her place of business is the Staten Island ACS Borough Office located at 350 St. Marks Place, 5th Floor, Staten Island, New York, 10301.  Ferretti personally participated in the unconstitutional search of Plaintiffs' residence on January 25-26, 2008.  In addition, she personally participated in the unconstitutional confinement of Ms. Piccone in connection with the search.  Ferretti is being sued in her individual capacity.

10.     Defendant ACS Deputy Director See Yuen Kuet ("Kuet") is an officer of ACS.  Upon information and belief, his place of business is the Staten Island ACS Borough Office located at 350 St. Marks Place, 5th Floor, Staten Island, New York 10301.  Upon information and belief, Kuet personally authorized the unconstitutional confinement of Ms.

Piccone and the unconstitutional search of Plaintiffs' residence on January 25-26, 2008. Kuet is being sued in his individual capacity.

11.     Upon information and belief, Defendants ACS John Does 1-10 are officers and supervisors of ACS. Their identities and places of business presently are unknown, but will be determined in discovery. Upon information and belief, these defendants personally authorized the unconstitutional confinement of Ms. Piccone and the unconstitutional search of Plaintiffs' residence on January 25-26, 2008. ACS John Does 1-10 are being sued in their individual capacities.

12.     Defendant New York City Police Department ("NYPD") is an agency or instrumentality of the City of New York. The Commissioner of the NYPD is Raymond W. Kelly. The NYPD headquarters is located at One Police Plaza, New York, New York, 10038.

13.     Defendant NYPD Officer No. 1 ("NYPD Officer No. 1") is an employee of the New York City Police Department. His identity presently is unknown, but will be determined in discovery. Upon information and belief, his place of business is the NYPD 122nd Precinct located at 2320 Hylan Boulevard, New Dorp, New York, 10306. NYPD Officer No. 1 personally participated in the unconstitutional search of Plaintiffs' residence on January 25-26, 2008. NYPD Officer No. 1 is being sued in his individual capacity.

14.     Defendant NYPD Officer No. 2 ("NYPD Officer No. 2") is an employee of the New York City Police Department. His identity presently is unknown, but will be determined in discovery. Upon information and belief, his place of business is the NYPD 122nd Precinct located at 2320 Hylan Boulevard, New Dorp, New York, 10306. NYPD Officer No. 2 personally participated in the unconstitutional search of Plaintiffs' residence on January 25-26, 2008. NYPD Officer No. 2 is being sued in his individual capacity.

15.     Defendant NYPD Sergeant Harrington is an employee of the New York City Police Department.  His first name presently is unknown, but will be determined in discovery.  Upon information and belief, his place of business is the NYPD 122nd Precinct located at 2320 Hylan Boulevard, New Dorp, New York, 10306.  Upon information and belief, Sergeant Harrington personally ordered the unconstitutional confinement of Ms. Piccone in connection with the unconstitutional search of Plaintiffs' residence on January 25-26, 2008. Sergeant Harrington is being sued in his individual capacity.

16.     Upon information and belief, Defendants NYPD John Does 1-10 are officers and supervisors of the NYPD.  Their identities and places of business presently are unknown, but will be determined in discovery.  Upon information and belief, these defendants personally authorized the unconstitutional confinement of Ms. Piccone and the unconstitutional search of Plaintiffs' residence on January 25-26, 2008.  NYPD John Does 1-10 are being sued in their individual capacities.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), insofar as this action arises under the Constitution and civil rights laws of the United States.

18.     This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), insofar as a substantial part of the events or omissions giving rise to this action occurred in this district.

19.     There are no administrative exhaustion requirements for bringing the present civil rights action under 28 U.S.C. § 1983.

## BACKGROUND

20.    The events of the present civil rights action took place in the context of an unconstitutional campaign by officials and agencies of the state of Massachusetts to deprive Louis and Elena Piccone of the custody and care of their three minor children.  Louis Piccone is the son of Dr. and Mrs. Piccone, and the brother of Ms. Piccone.  Elena Piccone is his wife.  Louis Piccone lives in Dalton, Massachusetts.  The facts of Louis Piccone's case necessary for an understanding of the case at bar are summarized below.

21.    On or about January 11, 2008, Louis Piccone was accused by a day care worker in Dalton, Massachusetts, of abusing his youngest son, Constantin (who was approximately three-and-a-half years old).  At no time has Louis Piccone abused any of his children.  The accusation against Louis Piccone was false and made without any physical or medical support.  Indeed, the day care worker told the Massachusetts Department of Social Services ("DSS") that she had no knowledge of any history of abuse or neglect of Constantin, and never saw any marks on him.  Upon information and belief, the accusation was made maliciously.

22.    In the evening of January 11, 2008, two investigators from the local DSS office, accompanied by two Dalton police officers, went to Louis Piccone's home to investigate the accusation.  Louis and Elena Piccone cooperated with the investigators and answered their questions for nearly two hours.  Louis Piccone adamantly denied the accusation that he had abused his son.   The investigators and police officers observed Constantin during the investigation.  The police report for the date in question stated that Constantin "was clean and had no sign of injuries."

23.     During the investigation, Louis Piccone would not permit the DSS investigators to interview Constantin unless the interview was videotaped. Louis Piccone required that the interview be videotaped both for evidentiary purposes and to protect himself and his family from any unprofessional, misleading, or suggestive questioning of their son, which is a recognized problem in child abuse investigations. The investigators refused to conduct a videotaped interview of Constantin, angrily telling Louis Piccone that "DSS doesn't do video." The investigators then threatened to take possession of all three children unless Louis Piccone vacated the family home. The DSS investigators' actions were unlawful, unconstitutional, and malicious. Trying to cooperate as fully as possible without surrendering his or his family's rights, Louis Piccone agreed to leave his home that night. The children remained in the custody of Elena Piccone, against whom no accusation of abuse had been made.

24.     The next day, January 12, 2008, Elena Piccone took Constantin to be examined by his pediatrician, who was advised that DSS had accused Louis Piccone of abusing his son. The pediatrician reported that Constantin's physical examination and behavior were "normal." The results of the examination were provided to DSS.

25.     On or about January 16, 2008, despite a complete lack of physical or medical evidence to support the accusation of child abuse against Louis Piccone, DSS obtained an ex parte order from the local family court awarding temporary custody of all three Piccone children to DSS. This ex parte order was obtained falsely and maliciously by DSS, and violated Louis and Elena Piccone's rights under the U.S. Constitution and Massachusetts law.

26.     Before DSS applied for the ex parte custody order, the three Piccone children had been taken out of the state, freely and lawfully, by Elena Piccone. Although DSS was informed of these facts, DSS engaged in vigorous and intrusive efforts to locate and take

-7-

custody of the children.   Relevant here, DSS believed that the children had been taken to Plaintiffs' residence in Staten Island, New York.

27.    In or about September 2008, the Massachusetts care and protection matter regarding the three Piccone children was dismissed by the local family court, and full legal custody over the children was restored to Louis and Elena Piccone.

## UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE AND UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME

28.    On or about January 25, 2008, Robert B. Hickey, a supervisor with the Pittsfield Area Office of the Massachusetts DSS sent a letter to New York ACS Deputy Director See Yuen Kuet "requesting your assistance in looking for the three Piccone children."  The letter stated that the children "are possibly at the home of Colleen Piccone, 35 Ridge Loop, Staten Island, NY 10304."  The letter further "ask[ed] that if the children are there that they be removed and placed in a home or shelter."  The letter was not sworn under oath, and contained false and misleading statements about the children's safety.  Upon information and belief, the letter was not accompanied by any court order or other supporting documentation.

29.    Upon information and belief, the letter from DSS to Kuet was relayed to one or more officers and supervisors of ACS.  Upon information and belief, Kuet and the other ACS officers and supervisors directed that employees of ACS conduct a search of Plaintiffs' residence in Staten Island to locate and take custody of the three Piccone children.

30.    At no time relevant to the present action were the three Piccone children inside Plaintiffs' residence at 35 Ridge Loop, Staten Island, New York.

31.    On January 25, 2008, at approximately 6:00 p.m., Ms. Piccone exited Plaintiffs' residence on Ridge Loop and was walking to her car, when she was accosted by ACS

-8-

Investigator Cynthia Donnelly. Donnelly refused to provide her name. Donnelly stated that she was from ACS and was "here to take the children." She did not provide Ms. Piccone with a court order or other legal process. Ms. Piccone told Donnelly that she would not be allowed inside the house without a warrant. Donnelly replied: "The police are on their way. You can cooperate with me now, or the police will take care of it." Donnelly further instructed Ms. Piccone: "You can't leave." Ms. Piccone then returned to the house, while Donnelly waited inside her vehicle with ACS Investigator Lori Ferretti.

32.     At approximately 6:50 p.m., Donnelly, Ferretti, and two NYPD police officers knocked on the door of Plaintiffs' residence, where they were met by Ms. Piccone. The police officers identified themselves as Officer Mazzello (badge no. 19424) and Officer Gagliano (badge no. 4617) of the 122nd Precinct. Donnelly and Ferretti refused to provide their names. Ms. Piccone asked if they had a warrant to enter and search the house. The police officers said they did not. Donnelly then stated: "We don't need a warrant to enter the property. When we have a remand order, we can enter." Neither Donnelly, Ferretti, nor the police officers provided Ms. Piccone with a court order or other legal process. Ms. Piccone did not allow them into the house.

33.     At approximately 7:40 p.m. and again at approximately 8:30 p.m., NYPD Sergeant Harrington came to the door of Plaintiffs' residence and spoke with Ms. Piccone. Ms. Piccone told Sergeant Harrington that the three Piccone children were not inside the house. Sergeant Harrington admitted to Ms. Piccone that "I cannot force you" to allow the ACS investigators into the house. He further admitted: "If it was an emergency, trust me, I'd be in here. If there was something from New York, I'd be in here. It's not." Ms. Piccone told him that she would not allow a consent search of the house. Sergeant Harrington then said that he

was sending the ACS investigators and one of his police officers to petition a judge for a search warrant. He further told Ms. Piccone: "I'm afraid to say this to you, I don't want a car leaving here in the time that I have my police officer here."

34.     During the course of his conversations with Ms. Piccone, Sergeant Harrington repeatedly explained that the entire incident was being supervised and approved by high-ranking members of ACS and the NYPD. He told Ms. Piccone: "It's going well higher than just these two ACS workers here; supposedly it's going up to a commissioner of their job." He stated: "It's gonna have to come from higher than them [referring to authorization to enter and search the house], and I will explain to you how high from ACS." Sergeant Harrington expressly "assured" Ms. Piccone that he "will call my duty captain before I go in there, and talk to someone higher up on the food chain of their job." He further stated: "I am definitely going to go up the ladder on this before I get into your house."

35.     Throughout the entire incident, one or more NYPD police cars remained parked outside Plaintiffs' residence, with one or more police officers conducting surveillance on the house. The house is situated on a circular road in a small, private housing community. The police cars and officers were in full view of Plaintiffs' neighbors.

36.     At approximately midnight on January 25, 2008, Ms. Piccone went outside the house and spoke with the police officer who then was on duty. The police officer (whose identity presently is unknown, but will be determined in discovery) told her that he had been ordered to "watch the house and make sure no one leaves. No one is allowed to leave." Upon information and belief, this order was issued by Sergeant Harrington and/or other high-ranking supervisory and policymaking officials of the NYPD.

37.     Throughout the entire incident, Ms. Piccone reasonably believed, based on the words and actions of the ACS investigators and the NYPD police officers, all of whom exercised actual or apparent law enforcement authority, that she was not free to leave the grounds of Plaintiffs' residence.

38.     Throughout the entire incident, Ms. Piccone, in fact, was not free to leave the grounds of Plaintiffs' residence.

39.     There was no probable cause or other legal justification to restrain Ms. Piccone's liberty and confine her to the grounds of Plaintiffs' residence.

40.     Upon information and belief, in the evening of January 25, 2008, members of ACS and the NYPD attempted to obtain a search warrant for Plaintiffs' residence from a judicial officer in New York City, but were denied. Despite having their application for a search warrant denied by the court, the Defendants proceeded to enter and search Plaintiffs' home.

41.     At approximately 2:00 a.m. on January 26, 2008, Donnelly, Ferretti, NYPD Officer No. 1, and NYPD Officer No. 2 came to the door of Plaintiffs' residence and spoke with Ms. Piccone. Ms. Piccone asked them if they had a search warrant for the house. The police officers admitted that they did not have a warrant, but asserted that the ACS investigators had authority to enter and search the house. Neither Donnelly, Ferretti, nor the police officers provided Ms. Piccone with a court order or other legal process. Ms. Piccone then asked the police officers what would happen if she refused to allow the ACS investigators into the house. The police officers told her: "We will have to knock down the door. We are getting into the house." Confronted with an explicit threat of violence, Ms. Piccone acquiesced to the police officers' demand.

42.     Donnelly, Ferretti, NYPD Officer No. 1, and NYPD Officer No. 2 then physically entered and searched Plaintiffs' home.   They did not have a search warrant authorizing them to search Plaintiffs' home.   Plaintiffs did not consent to the search of their home. The search of Plaintiffs' home was not justified by any exigent circumstances.

43.     Donnelly and Ferretti did not identify themselves by name prior to entering Plaintiffs' home and conducting the search.

44.     The search of Plaintiffs' home lasted approximately 15-20 minutes and extended throughout the three-level house. During the search, the Defendants demanded a list, by name and age, of every person living in the house.  During the search, the Defendants intruded upon and inspected Plaintiffs' private living quarters.   During the search, the Defendants entered into the bedrooms of the adult and child family members living in the house, including Dr. and Mrs. Piccone, Ms. Piccone, and Ms. Piccone's minor son and daughter.

45.     Louis and Elena Piccone's children were not in the house, just as Ms. Piccone had told Sergeant Harrington.

46.     Upon information and belief, the search of Plaintiffs' home was authorized by high-ranking supervisory and policymaking officials of ACS and the NYPD.

47.     Upon information and belief, the search of Plaintiffs' home was ordered pursuant to established ACS and NYPD policy or practice.

48.     Upon information and belief, the search of Plaintiffs' home was ordered by one or more ACS and NYPD employees who have final policymaking authority.

## COUNT ONE:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (Donnelly and Ferretti)

49.     Plaintiffs repeat and re-allege Paragraphs 1-48 above.

50.     Donnelly and Ferretti, acting under color of state law, violated Plaintiffs' rights under the Fourth Amendment when they entered and searched Plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

51.     Plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

52.     It was not objectively reasonable for Donnelly and Ferretti to believe that their search of Plaintiffs' home did not violate Plaintiffs' rights under the Fourth Amendment.

53.     Donnelly and Ferretti acted with reckless indifference to Plaintiffs' rights under the Fourth Amendment when they searched Plaintiffs' home.

54.     Plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of Donnelly and Ferretti's unconstitutional search of their home.

55.     Plaintiffs are entitled to an award of punitive damages to punish Donnelly and Ferretti for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT TWO:  UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE
### (Donnelly and Ferretti)

56.     Plaintiffs repeat and re-allege Paragraphs 1-55 above.

-13-

57.    Donnelly and Ferretti, acting under color of state law, violated Ms. Piccone's rights under the Fourth Amendment when they restrained her liberty and confined her to the grounds of Plaintiffs' residence without probable cause or other legal justification.

58.    Ms. Piccone's rights under the Fourth Amendment were clearly established at the time of her confinement.

59.    It was not objectively reasonable for Donnelly and Ferretti to believe that confining Ms. Piccone to the grounds of Plaintiffs' residence did not violate Ms. Piccone's rights under the Fourth Amendment.

60.    Donnelly and Ferretti acted with reckless indifference to Ms. Piccone's rights under the Fourth Amendment when they confined her to the grounds of Plaintiffs' residence.

61.    Ms. Piccone has suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of her unconstitutional confinement by Donnelly and Ferretti.

62.    Ms. Piccone is entitled to an award of punitive damages to punish Donnelly and Ferretti for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT THREE:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (Kuet)

63.    Plaintiffs repeat and re-allege Paragraphs 1-62 above.

64.    Upon information and belief, Kuet, acting under color of state law, violated Plaintiffs' rights under the Fourth Amendment when he personally authorized the search

of Plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

65.     Upon information and belief, Kuet, acting under color of state law, personally created, or allowed the continuance of, a policy or custom under which the unconstitutional search of Plaintiffs' home occurred.

66.     Upon information and belief, Kuet, acting under color of state law, was grossly negligent in supervising Donnelly and Ferretti in connection with the unconstitutional search of Plaintiffs' residence.

67.     Plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

68.     It was not objectively reasonable for Kuet to believe that the search of Plaintiffs' home did not violate Plaintiffs' rights under the Fourth Amendment.

69.     Kuet acted with reckless indifference to Plaintiffs' rights under the Fourth Amendment in connection with the search of Plaintiffs' home.

70.     Plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of Kuet's conduct in connection with the unconstitutional search of their home.

71.     Plaintiffs are entitled to an award of punitive damages to punish Kuet for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT FOUR:  UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE
### (Kuet)

72.     Plaintiffs repeat and re-allege Paragraphs 1-71 above.

73.     Upon information and belief, Kuet, acting under color of state law, violated Ms. Piccone's rights under the Fourth Amendment when he personally authorized Donnelly and Ferretti to restrain her liberty and confine her to the grounds of Plaintiffs' residence without probable cause or other legal justification.

74.     Upon information and belief, Kuet, acting under color of state law, personally created, or allowed the continuance of, a policy or custom under which the unconstitutional confinement of Ms. Piccone occurred.

75.     Upon information and belief, Kuet, acting under color of state law, was grossly negligent in supervising Donnelly and Ferretti in connection with the unconstitutional confinement of Ms. Piccone.

76.     Ms. Piccone's rights under the Fourth Amendment were clearly established at the time of her confinement.

77.     It was not objectively reasonable for Kuet to believe that confining Ms. Piccone to the grounds of Plaintiffs' residence did not violate Ms. Piccone's rights under the Fourth Amendment.

78.     Kuet acted with reckless indifference to Ms. Piccone's rights under the Fourth Amendment in connection with her confinement.

79.     Ms. Piccone has suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of Kuet's conduct in connection with her unconstitutional confinement.

80.     Ms. Piccone is entitled to an award of punitive damages to punish Kuet for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT FIVE:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (ACS John Does 1-10)

81.     Plaintiffs repeat and re-allege Paragraphs 1-80 above.

82.     Upon information and belief, ACS John Does 1-10, acting under color of state law, violated Plaintiffs' rights under the Fourth Amendment when they personally authorized the search of Plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

83.     Upon information and belief, ACS John Does 1-10, acting under color of state law, personally created, or allowed the continuance of, a policy or custom under which the unconstitutional search of Plaintiffs' home occurred.

84.     Upon information and belief, ACS John Does 1-10, acting under color of state law, were grossly negligent in supervising Donnelly and Ferretti in connection with the unconstitutional search of Plaintiffs' residence.

85.     Plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

86.     It was not objectively reasonable for ACS John Does 1-10 to believe that the search of Plaintiffs' home did not violate Plaintiffs' rights under the Fourth Amendment.

87.     ACS John Does 1-10 acted with reckless indifference to Plaintiffs' rights under the Fourth Amendment in connection with the search of Plaintiffs' home.

88.     Plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of ACS John Does 1-10's conduct in connection with the unconstitutional search of their home.

89.     Plaintiffs are entitled to an award of punitive damages to punish ACS John Does 1-10 for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT SIX:  UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE
### (ACS John Does 1-10)

90.     Plaintiffs repeat and re-allege Paragraphs 1-89 above.

91.     Upon information and belief, ACS John Does 1-10, acting under color of state law, violated Ms. Piccone's rights under the Fourth Amendment when they personally authorized Donnelly and Ferretti to restrain her liberty and confine her to the grounds of Plaintiffs' residence without probable cause or other legal justification.

92.     Upon information and belief, ACS John Does 1-10, acting under color of state law, personally created, or allowed the continuance of, a policy or custom under which the unconstitutional confinement of Ms. Piccone occurred.

93.     Upon information and belief, ACS John Does 1-10, acting under color of state law, were grossly negligent in supervising Donnelly and Ferretti in connection with the unconstitutional confinement of Ms. Piccone.

94.     Ms. Piccone's rights under the Fourth Amendment were clearly established at the time of her confinement.

95.     It was not objectively reasonable for ACS John Does 1-10 to believe that confining Ms. Piccone to the grounds of Plaintiffs' residence did not violate Ms. Piccone's rights under the Fourth Amendment.

96.     ACS John Does 1-10 acted with reckless indifference to Ms. Piccone's rights under the Fourth Amendment in connection with her confinement.

-18-

97.    Ms. Piccone has suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of ACS John Does 1-10's conduct in connection with her unconstitutional confinement.

98.    Ms. Piccone is entitled to an award of punitive damages to punish ACS John Does 1-10 for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT SEVEN:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (NYPD Officer No. 1 and NYPD Officer No. 2)

99.    Plaintiffs repeat and re-allege Paragraphs 1-98 above.

100.    NYPD Officer No. 1 and NYPD Officer No. 2, acting under color of state law, violated Plaintiffs' rights under the Fourth Amendment when they entered and searched Plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

101.    Plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

102.    It was not objectively reasonable for NYPD Officer No. 1 and NYPD Officer No. 2 to believe that their search of Plaintiffs' home did not violate Plaintiffs' rights under the Fourth Amendment.

103.    NYPD Officer No. 1 and NYPD Officer No. 2 acted with reckless indifference to Plaintiffs' rights under the Fourth Amendment when they searched Plaintiffs' home.

104.    Plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of NYPD Officer No. 1 and NYPD Officer No. 2's unconstitutional search of their home.

105.    Plaintiffs are entitled to an award of punitive damages to punish NYPD Officer No. 1 and NYPD Officer No. 2 for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT EIGHT:  UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE
### (Sergeant Harrington)

106.    Plaintiffs repeat and re-allege Paragraphs 1-105 above.

107.    Upon information and belief, Sergeant Harrington, acting under color of state law, violated Ms. Piccone's rights under the Fourth Amendment when he personally ordered NYPD police officers to restrain her liberty and confine her to the grounds of Plaintiffs' residence without probable cause or other legal justification.

108.    Ms. Piccone's rights under the Fourth Amendment were clearly established at the time of her confinement.

109.    It was not objectively reasonable for Sergeant Harrington to believe that confining Ms. Piccone to the grounds of Plaintiffs' residence did not violate Ms. Piccone's rights under the Fourth Amendment.

110.    Sergeant Harrington acted with reckless indifference to Ms. Piccone's rights under the Fourth Amendment when he ordered that she be confined to the grounds of Plaintiffs' residence.

111.    Ms. Piccone has suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of Sergeant Harrington's conduct in connection with her unconstitutional confinement.

112.   Ms. Piccone is entitled to an award of punitive damages to punish Sergeant Harrington for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT NINE:  UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (NYPD John Does 1-10)

113.   Plaintiffs repeat and re-allege Paragraphs 1-112 above.

114.   Upon information and belief, NYPD John Does 1-10, acting under color of state law, violated Plaintiffs' rights under the Fourth Amendment when they personally authorized the search of Plaintiffs' home without a warrant, without consent, and in the absence of exigent circumstances.

115.   Upon information and belief, NYPD John Does 1-10, acting under color of state law, personally created, or allowed the continuance of, a policy or custom under which the unconstitutional search of Plaintiffs' home occurred.

116.   Upon information and belief, NYPD John Does 1-10, acting under color of state law, were grossly negligent in supervising NYPD Officer No. 1 and NYPD Officer No. 2 in connection with the unconstitutional search of Plaintiffs' residence.

117.   Plaintiffs' rights under the Fourth Amendment were clearly established at the time of the search.

118.   It was not objectively reasonable for NYPD John Does 1-10 to believe that the search of Plaintiffs' home did not violate Plaintiffs' rights under the Fourth Amendment.

119.   NYPD John Does 1-10 acted with reckless indifference to Plaintiffs' rights under the Fourth Amendment in connection with the search of Plaintiffs' home.

120.    Plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of NYPD John Does 1-10's conduct in connection with the unconstitutional search of their home.

121.    Plaintiffs are entitled to an award of punitive damages to punish NYPD John Does 1-10 for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT TEN:  UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE
### (NYPD John Does 1-10)

122.    Plaintiffs repeat and re-allege Paragraphs 1-121 above.

123.    Upon information and belief, NYPD John Does 1-10, acting under color of state law, violated Ms. Piccone's rights under the Fourth Amendment when they personally authorized Sergeant Harrington and other NYPD police officers to restrain her liberty and confine her to the grounds of Plaintiffs' residence without probable cause or other legal justification.

124.    Upon information and belief, NYPD John Does 1-10, acting under color of state law, personally created, or allowed the continuance of, a policy or custom under which the unconstitutional confinement of Ms. Piccone occurred.

125.    Upon information and belief, NYPD John Does 1-10, acting under color of state law, were grossly negligent in supervising Sergeant Harrington and other NYPD police officers in connection with the unconstitutional confinement of Ms. Piccone.

126.    Ms. Piccone's rights under the Fourth Amendment were clearly established at the time of her confinement.

127.   It was not objectively reasonable for NYPD John Does 1-10 to believe that confining Ms. Piccone to the grounds of Plaintiffs' residence did not violate Ms. Piccone's rights under the Fourth Amendment.

128.   NYPD John Does 1-10 acted with reckless indifference to Ms. Piccone's rights under the Fourth Amendment in connection with her confinement.

129.   Ms. Piccone has suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of NYPD John Does 1-10's conduct in connection with her unconstitutional confinement.

130.   Ms. Piccone is entitled to an award of punitive damages to punish NYPD John Does 1-10 for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT ELEVEN: UNCONSTITUTIONAL SEARCH OF PLAINTIFFS' HOME
### (NYC, ACS, NYPD)

131.   Plaintiffs repeat and re-allege Paragraphs 1-130 above.

132.   Upon information and belief, the unconstitutional search of Plaintiffs' home was ordered and conducted pursuant to an officially promulgated policy sanctioned or ordered by the City of New York.

133.   Upon information and belief, the unconstitutional search of Plaintiffs' home was ordered and conducted pursuant to a pervasive custom or practice of the New York City Administration for Children's Services and/or the New York City Police Department that has been approved by the City of New York and/or which the City of New York is or should be aware of.

134.    Upon information and belief, the unconstitutional search of Plaintiffs' home was ordered or authorized by one or more high-ranking ACS and/or NYPD officers and employees who have final policymaking authority in this area.

135.    Upon information and belief, the City of New York was deliberately indifferent to Plaintiffs' constitutional rights by failing to train and supervise the ACS and/or the NYPD officers and employees who ordered and conducted the unconstitutional search of Plaintiffs' home.

136.    Plaintiffs have suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of the City of New York's conduct in connection with the unconstitutional search of their home.

## COUNT TWELVE:  UNCONSTITUTIONAL CONFINEMENT OF MS. PICCONE
### (NYC, ACS, NYPD)

137.    Plaintiffs repeat and re-allege Paragraphs 1-136 above.

138.    Upon information and belief, the unconstitutional confinement of Ms. Piccone was ordered and conducted pursuant to an officially promulgated policy sanctioned or ordered by the City of New York.

139.    Upon information and belief, the unconstitutional confinement of Ms. Piccone was ordered and conducted pursuant to a pervasive custom or practice of the New York City Administration for Children's Services and/or the New York City Police Department that has been approved by the City of New York and/or which the City of New York is or should be aware of.

140.    Upon information and belief, the unconstitutional confinement of Ms. Piccone was ordered or authorized by one or more high-ranking ACS and/or NYPD officers and employees who have final policymaking authority in this area.

141.    Upon information and belief, the City of New York was deliberately indifferent to Ms. Piccone's constitutional rights by failing to train and supervise the ACS and/or the NYPD officers and employees who ordered and conducted her unconstitutional confinement.

142.    Ms. Piccone has suffered mental anguish, emotional distress, embarrassment, humiliation, loss of trust, and other compensable injuries as a result of the City of New York's conduct in connection with her unconstitutional confinement.

## PRAYER FOR RELIEF

A.      Plaintiffs demand judgment in their favor on Counts 1-12 above.

B.      Plaintiff Colleen C. Piccone demands $150,000 in compensatory damages for the unconstitutional search of Plaintiffs' home.

C.      Plaintiff Vincent A. Piccone, Jr., demands $150,000 in compensatory damages for the unconstitutional search of Plaintiffs' home.

D.      Plaintiff Colleen M. Piccone demands $150,000 in compensatory damages for the unconstitutional search of Plaintiffs' home.

E.      Plaintiffs demand $50,000 in punitive damages from each of the individual defendants who are liable for the unconstitutional search of their home.

F.      Ms. Piccone demands $150,000 in compensatory damages for her unconstitutional confinement.

G.      Ms. Piccone demands $50,000 in punitive damages from each of the individual defendants who are liable for her unconstitutional confinement.

H.     Plaintiffs demand attorney's fees and costs, pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d), and all other applicable laws and rules.

I.     Plaintiffs demand such other and further relief as the Court deems just and proper.

Dated: December 8, 2008
       New York, New York

Respectfully submitted,

LAW FIRM OF STEVEN M. WARSHAWSKY
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York  10118

*Attorney for Plaintiffs*

By:     _____
        STEVEN M. WARSHAWSKY (SW 5431)
        Tel:  (212) 601-1980
        Fax:  (212) 601-2610
        E-mail:  smw@warshawskylawfirm.com